## LEVY FISHER *vs.* HARRY FISHER.

MARCH 1, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J. This is a suit in equity between two brothers who were formerly, for many years, engaged as the only partners in a general real estate business under an oral partnership agreement. The substantial relief asked for is that any agreements between the parties for settlement of the partnership affairs be cancelled and that the respondent be ordered to account for all properties and income derived through the partnership.

The cause was heard in the superior court on bill, answer, replication and proof; and a decision was made in favor of the respondent. Thereon a decree was entered by which the prayer of the bill was denied and the bill was dismissed. The cause is now before us on the appeal of the complainant

from this decree, the reasons of appeal being that the decree is contrary to the evidence and that it is contrary to the law.

By undisputed evidence the following facts were established. The complainant contributed to the partnership a great deal more money than the respondent did; but the latter was much the more active in the business. In 1932 the parties decided to dissolve the partnership and settle its affairs; and a written agreement was entered into between them for that purpose on July 11, 1932. In this it was recited that Levy had invested in the partnership enterprises $17,705.44 in excess of the amount invested therein by Harry; and provisions were made for the payment of that sum to Levy out of the partnership assets. It was also stated in this agreement that Harry was indebted to Levy on a promissory note in the sum of $2000.

Some disputes having arisen later between the parties, they agreed to submit them to four arbitrators, two being chosen by each party. After hearing the parties and considering the partnership affairs, the arbitrators agreed upon an award in writing, dated October 24, 1933, by which it was found that Harry was indebted to Levy in the net sum of $8213.90. It was provided that as security for the payment of that sum Harry should transfer four described real estate mortgages aggregating $15,250, and that when the above-mentioned sum of $8213.90 had been paid, these mortgages should be returned to Harry, and then the award should operate as a mutual release between the parties of all matters submitted to the arbitrators.

A little later the parties went before an attorney, who had previously acted as attorney for Harry, but who testified at the hearing in the superior court that on this occasion he acted for both parties; and after some conferences a written agreement was drawn, and was signed by the parties on November 30, 1933. By this agreement it was agreed

that the first-above mentioned previous agreement and the arbitration agreement and award be cancelled.

By this last agreement Harry acknowledged himself indebted to Levy in the sum of $8213.90, the same sum that was fixed in the arbitration award as the amount of such indebtedness, and he agreed to pay this sum by causing certain conveyances to be made to Levy, the making of which on the day of the agreement was recited therein.

The first of these conveyances was of a one-half interest in certain real estate, located on Charles street in the city of Providence, for a credit of $3000. The second of these conveyances was of a one-half interest in two certain parcels of real estate located respectively on Ayrault and Felix streets in Providence and in certain lots in the town of Johnston, Rhode Island, and in a mortgage on certain lots in that town, all for the sum of $1000, to be credited on Harry's indebtedness to Levy. The third conveyance was of two certain mortgages on real estate, then securing the sum of $4250, which was to be credited on Harry's indebtedness to Levy. The credits for these three conveyances exceeded the amount of that indebtedness by $36.10, which the agreement recited as having been then paid by Levy to Harry.

Provision was also made in the agreement for the guaranteeing by Harry to Levy of the payment of the last two mortgages above mentioned and for the securing of the performance of such guaranty. But we need not go into the details of these matters.

The facts alleged in the bill of complaint, as the grounds for the relief prayed for, are that the complainant is illiterate and was not represented by counsel in the matters concerning the dissolution of the partnership and permitted his literate brother to engage the latter's lawyer to affect the dissolution; that at the time of the making of the above

agreements the complainant was "ill in body and mind and physically and mentally unable to comprehend the significance and effect of said agreements"; that he confided in and reposed great trust in the respondent; that the agreements do not constitute a true accounting; and that in the purported accounting there was an omission of many items, eight of such alleged omitted items being set forth.

After the execution of the last of the agreements, on November 20, 1933, the parties thereto proceeded to act under it; but after a time trouble arose between them with regard to the final adjustment of their affairs. However, no proceeding in court was started by the complainant to have the last agreement set aside until the filing of the present suit on October 8, 1937.

At the hearing of the cause in the superior court the lawyer who drew the two agreements above mentioned testified that the parties talked over their problems at great length and that he put into written legal form the agreement at which they had arrived. He also testified that before the last agreement was signed he delivered a copy of it to the complainant, so that the complainant could have a friend of his read it to him. All four arbitrators testified; and two of them, one of whom had been appointed by each of the parties, testified that both of the parties appeared before the arbitrators and presented at length their respective contentions.

The transcript of the testimony shows that the complainant, while he could not read or write the English language, could speak and understand it well. The trial justice found, in substance, that the complainant had had long experience in the real estate business and in building houses; and that his illiteracy as to English offered no impediment to his understanding the agreements signed by him which were involved in this cause.

The trial justice found that the testimony did not show that the complainant failed to appreciate and understand the last agreement by reason of mental or physical disability; that it did show that he was intellectually able to understand and appreciate that agreement; that it did not reasonably show that there was a breach of the confidential relation between the parties such as would affect the validity of that agreement; and that in signing it he knew and appreciated its purport and extent.

The trial justice also found that, under the circumstances and after the four years delay, the complainant could not compel an accounting by the respondent; that he is not entitled to the relief for which he prays and that the bill of complaint must therefore be dismissed. After an examination and consideration of the evidence, we are of the opinion that his findings and conclusions are not against a preponderance of the evidence or against the law.

Although no such ground for relief is stated in the bill of complaint, the complainant's attorney has vigorously contended before us that the last agreement should be set aside and an accounting decreed, because under the agreement the amount found to be owed to him by the respondent individually was paid, mainly, if not entirely, by the conveyance to him of partnership property in which he already was entitled to a half interest as a partner.

But the evidence shows clearly that, as to the Charles street property mentioned in that agreement, a one-half interest had some time before been conveyed to Levy; that the other half interest stood in the name of the Fisher Realty Company, a corporation controlled by Harry; that it was, on the date of the agreement, conveyed by that corporation to Levy; and that credit to Harry under the last agreement was given for the latter half interest only.

The evidence also shows that, as to. the properties on Ayrault and Felix streets in Providence, just before this agreement was made one undivided half interest was in Levy and the other in the above corporation, which on the date of the agreement conveyed that half interest to Levy. As to the lots in the town of Johnston and as to the mortgage on four lots in that town, we find no evidence that shows that Levy under the agreement received only a half interest to which he was already equitably entitled as a partner and the burden of proving this was upon him.

As to the Karibian mortgages, also mentioned in the last agreement, the evidence shows that these were clearly among mortgages that are referred to in the brief for the complainant as "certain mortgages owned by the respondent personally." For these reasons we find no merit in the above-mentioned contention on behalf of the complainant.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Aram A. Arabian,* for complainant.

*Robinson & Robinson, Charles M. Robinson, Edmund Wexler,* for respondent.